**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Farmers Insurance Exchange, Truck Insurance
Exchange, Fire Insurance Exchange, Mid-
Century Insurance Exchange, Farmers New
World Life Insurance Company, Illinois
Farmers Insurance Company,

                Plaintiffs,

v.

Theodore West, and Tedd West Insurance
Agency,

                Defendants.

Civ. No. 11-2297 (PAM/JJK)

**ORDER**

---

This matter came before the undersigned United States Magistrate Judge Leo I. Brisbois, on a general assignment made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(A), on the parties' cross-motions to compel discovery. (Doc. No. 30, Pls.' Mot. to Compel Discovery from Defs.; Doc. No. 36, Defs.' Mot. to Compel.)[1] The Court held a hearing on the motions on August 27, 2012. (Doc. No. 52, Minute Entry for Mot. Hr'g.) For the reasons that follow, the Court grants in part and denies in part both parties' motions.

I.      **BACKGROUND**

     A.    **Plaintiffs' Complaint**

Plaintiffs Farmers Insurance Exchange, Truck Insurance Exchange, Fire Insurance Exchange, Mid-Century Insurance Exchange, Farmers New World Life Insurance Company, and

---

[1] The cross-motions were heard and decided by United States Magistrate Judge Brisbois due to a temporary unavailability of United States Magistrate Judge Jeffrey J. Keyes. However, the case remains assigned to Judge Keyes.

Illinois Farmers Insurance Company (referred to herein collectively as "Plaintiffs"), are related insurance companies from California. (Doc. No. 1, Attach. 1, Compl. ¶ 1.) Plaintiffs sell auto, homeowner's, commercial, and life insurance in several states, including Minnesota. (Compl. ¶ 2.) In this lawsuit, Plaintiffs bring claims against Defendant Theodore West and his independent insurance agency, Defendant Tedd West Insurance Agency, Inc. (referred to herein collectively as "Defendants"), for events arising out of the parties' relationship, which began in 2003. (See Compl. ¶¶ 3–4, 21–49.) In that relationship, Defendants trained and recruited insurance agents for Farmers under contracts the parties executed in June 2003 and January 2004, which, respectively, made Defendant West a "District Manager" and his agency a "Corporate District Manager." (Compl. ¶¶ 6–8.) The latter of these agreements, a "Corporate District Manager Agreement," provided that Farmers' customer lists, manuals, and other materials used by Defendants were Plaintiffs' exclusive and confidential property. (Compl. ¶¶ 9–10.) The Corporate District Manager Agreement further provided that Defendants would not use or divulge the proprietary information found in those materials in any way that could be detrimental to Plaintiffs. (Compl. ¶ 10.) Defendants also agreed to return certain manuals, customer lists, and records to Plaintiffs once the Corporate District Manager Agreement was terminated. (Id.) And finally, the Corporate District Manager Agreement provided that Defendants would not compete with Plaintiffs for a one-year period after any termination of the agreement; this non-compete provision specifically covered territories in Plaintiffs' "District 14" or in any adjoining counties that Defendants serviced during the term of the contract. (Compl. ¶ 13.)

Plaintiffs assert that Defendants resigned from their relationships with Plaintiffs effective on December 1, 2010. (Compl. ¶ 15.) This led to the termination of the Corporate District Manager Agreement, and since its termination, Plaintiffs allege that Defendants have breached

its express terms by soliciting insurance business and working with entities that were Plaintiffs' customers prior to Defendants' departure.  (See Compl. ¶¶ 17, 18(a).)  Plaintiffs also allege that West and his agency misappropriated and improperly retained Farmers' confidential business information relating to Plaintiffs' policyholders.  (Compl. ¶ 18(b).)  Based on these and other allegations in the Complaint, Plaintiffs assert claims for (1) breach of contract; (2) breach of fiduciary duty; (3) misappropriation of trade secrets and confidential information; (4) tortious interference with prospective and existing business and contractual relations; (5) declaratory judgment; and (6) injunctive relief.  (Compl. ¶¶ 21–49.)

**B.  Defendants' Answer and Counterclaims**

In their Answer, Defendants deny Plaintiffs' allegations of misconduct and deny that Plaintiffs are entitled to relief under any cause of action asserted in their Complaint.  (Doc. No. 2, Ans. and Countercl. ¶¶ 18–49.)  Defendants also assert several Counterclaims against Plaintiffs for (1) breach of contract; (2) deceptive trade practices in violation of Minn. Stat. § 325D.44; (3) unjust enrichment; (4) breach of duty of good faith and fair dealing; (5) racial discrimination in the form of disparate treatment and retaliation in violation of 42 U.S.C. § 1981; (6) defamation and defamation per se; (7) injunctive relief; (8) declaratory judgment; and (9) punitive damages.   In their Counterclaim, Defendants assert that despite Defendant West's exceptional performance in his position as Plaintiffs' District Manager, Plaintiffs failed to compensate him in accordance with an addendum to the District Manager Agreement, which was meant to reward him for "elevated levels of performance."  (Ans. and Countercl. ¶ 67; see also id. ¶¶ 68–72.)  Defendants also assert that Defendant West's supervisor targeted him for differential treatment based on race, which is evidenced by his supervisor, a man named Locke Pierce, giving similarly situated white district managers preferential treatment.  (Ans. and

Countercl. ¶¶ 76–80, 82–92.)  According to Defendants, some of this harassing conduct also constituted defamation and defamation per se.  (Ans. and Countercl. ¶¶ 138–44 (referring to Plaintiffs' actions detailed in various portions of Paragraph 79 as implying, connoting, and insinuating that Defendant West was "in fact inept").)  Further, Defendants claim that since their relationship with Plaintiffs terminated, Plaintiffs have deceptively represented to the public that Defendants are still affiliated with Plaintiffs by using Defendants' names and business addresses to do Plaintiffs' business.  (Ans. and Countercl. ¶¶ 93–98.)

### C.    The Parties' Discovery Motions, Generally

During the course of this litigation, the parties served various discovery requests on one another in accordance with the Federal Rules of Civil Procedure, but neither party believes that the other has complied with its obligations under those Rules.  In Plaintiffs' Motion to Compel Discovery from Defendants (Doc. No. 30), Plaintiffs seek the production of documents responsive to three requests for production.  (See Doc. No. 32, Pls.' Mem. in Supp. of Mot. to Compel Discovery from Defs.' ("Pls.' Mem.") 3–4.)  Plaintiffs contend that Defendants produced very few documents in response to these document requests that have a direct bearing on liability and damages; they seek an order compelling further production despite Defendants' assertion that they have produced all the documents that exist in their files.  (See generally Pls.' Mem. 4–10.)

In Defendants' Motion to Compel Discovery (Doc. No. 36), Defendants seek responses to several requests for production and interrogatories.  (Doc. No. 37, Defs.' Mem. of Law in Supp. of Mot. to Compel ("Defs.' Mem.") 1.)  Generally speaking, Defendants argue that Plaintiffs: (1) improperly objected to the number of interrogatories Defendants served; (2) improperly asserted boilerplate objections to various discovery requests; (3) improperly

produced thousands of pages of documents without indicating which documents were responsive to specific requests for production by Bates number; and (4) failed to produce an appropriate privilege log.  (See Defs.' Mem. 2.)

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  The rule is construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case."  Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).  There is no bright-line rule regarding what is discoverable; instead, courts must individually evaluate each request "to determine whether the extent of discovery should be limited because the burden or expense outweighs the likely benefit."  Dahl v. Wells Fargo Advisors, LLC, No. 10-4696 (ADM/FLN), 2012 WL 124986, at *3 (D. Minn. Jan. 17, 2012).

"On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery."  Fed. R. Civ. P. 37(a)(1).  Further, Fed. R. Civ. P. 37(a)(3) provides for various motions to compel disclosure or compel discovery depending on the failure of the other party.  Specifically, Rule 37(a)(3)(B)(iii) and (iv), provide that the Court may order disclosure if a party fails to disclose information required under Federal Rule of Civil Procedure Rules 33 (concerning interrogatories) and 34 (concerning document requests), respectively.

## III.    PLAINTIFFS' MOTION TO COMPEL

Plaintiffs' motion concerns three requests for production they served on Defendants seeking information related to their breach of contract claims, which are premised on the allegation that Defendants have, since termination of the Corporate District Manager Agreement,

improperly conducted business with Plaintiffs' former policy holders. (Doc. No. 32, Pls.' Mem. 3.) These three requests for production and Defendants' responses to them are set forth as follows:

> 7.      All documents that reflect, refer or relate to any communication you have had since December 1, 2010, with any persons or entities who were Farmers policy holders at any time prior to December 2, 2010.
>
> <u>Response:</u>      [Defendants objected on several grounds but agreed to produce responsive documents.]
>
> 8.      All documents that reflect, refer or relate to any insurance policies you have written or insurance services you have provided since December 1, 2010, for any persons or entities who were Farmers policyholders at any time prior to December 2, 2010.
>
> <u>Response:</u>      [Defendants objected on several grounds but agreed to produce responsive documents.]
>
> 9.      All documents that reflect, refer or relate to the income you have earned as an Insurance agent or insurance agency since December 1, 2010, including, but not limited to, statements of operations, commission statements, tax returns, Schedule C's, as a result of soliciting, accepting or servicing the insurance business any [sic] persons or entities who were Farmers policyholders at any time prior to December 2, 2010.
>
> <u>Response:</u>      [Defendants objected on several grounds, agreed to produce responsive documents, but stated that they located nothing responsive.]

(Doc. No. 33, Aff. of Melvin Weinstein ("Weinstein Aff.") ¶ 2, Ex. A at 5–6.)

Plaintiffs argue that, although Defendants indicated in their written responses that they would provide documents in their possession, custody, or control that are responsive to the foregoing requests, "Defendants have produced very few documents responsive to Request Nos. 7–9." (Pls.' Mem. 4.) Plaintiffs contend that Defendants likely have additional documents responsive to these requests, in light of information obtained as a result of third-party subpoenas and in light of Defendant West's deposition testimony. (Pls.' Mem. 4, 7.) Specifically, Plaintiffs

point out that during his deposition, Defendant West admitted that he has conducted certain insurance business since termination of the Corporate District Manager Agreement with at least one entity, Legacy Management & Development Corporation, which formerly held policies with Plaintiffs. (Weinstein Aff. ¶ 3, Ex. B, May 2, 2012 Dep. of Theodore West ("West Dep.") 161, 163–66.) Plaintiffs assert that in light of Defendant West's testimony regarding this and other contacts he has had with Legacy and records he believed were in his possession (see, e.g., West Dep. 194–97, 203), it is hard to understand how Defendants produced no documents reflecting communications or commissions between Mr. West and Legacy. (Doc. No. 32, Pls.' Mem. 6.) Finally, Plaintiffs note that in response to subpoenas they served on certain third parties, they received communications Mr. West sent to a former policyholder shortly after his relationship with Plaintiffs had terminated. (Weinstein Aff. ¶ 6, Ex. E at 3.) Based on this record, Plaintiffs ask the Court to order Defendants to produce additional documents responsive to their Document Request Nos. 7–9. Alternatively, if Defendants insist they have no other responsive documents, Plaintiffs believe they are entitled to have Defendants explain what efforts they undertook to locate materials responsive to these requests. (See Doc. No. 52, Minutes for Mot. Hr'g, Recording of Hr'g Tr. ("Tr.") 2:55:41–2:56:00.)

Defendants contend that Plaintiffs are attempting to obtain an order compelling production of documents based on mere speculation that some other documents exist. (Doc. No. 48, Defs.' Mem. of Law in Opp'n to Pls.' Mot. to Compel ("Defs.' Resp.") 1, 4.) Defendant West filed an affidavit asserting that he received a copy of Plaintiffs' discovery requests and produced "everything [he] had responsive to each request," and that if some information was not produced he no longer had it. (Doc. No. 49, Aff. of Theodore West ("West Aff.") ¶¶ 2, 3.) At the August 27, 2012 hearing, Defendants responded to Plaintiffs' suggestion that they are

entitled to know what kind of inquiry Defendants conducted to locate responsive records by arguing that "implicit" in their response to these requests is the representation that he conducted a reasonable search of his computer, network, etc. (Doc. No. 52, Tr. 3:04:33–3:04:50.)

Contrary to Defendants' argument, Plaintiffs have offered more than conjecture and speculation that Defendants may have other documents within their possession, custody, or control that are responsive to these requests and that have not been produced. The record before the Court amply demonstrates that, after termination of the Corporate District Manager Agreement, Defendant West had contact with at least one policyholder—Legacy—that had previously had a relationship with Plaintiffs. At the hearing, Plaintiffs' counsel also noted that Defendant West admitted in his deposition that he possessed certain checks reflecting commissions he has received from another third party, National Housing Insurance Group, and Defendants did not dispute that representation. (See Tr. 3:08:12–3:08:59.) Thus, the record supports the conclusion that Defendants may have failed to produce everything in their possession, custody, or control that is responsive to Plaintiffs' Document Request Nos. 7–9. Alternatively, the record supports the conclusion that Defendants may have conducted an inadequate search[2] for responsive documents, or that documents responsive to these requests may have existed at one time, but no longer exist today.[3]

---

[2] At the hearing, Defendants' counsel argued that it was very likely that everyone in the courtroom had an email in his or her inbox that was no longer in the sender's email folders and that email communications are often moved to the "trash" folder of an email program. (Tr. 3:06:39–3:07:03.) To the extent this argument suggests that Mr. West's "trash" folder in his email account was not searched in response to Plaintiffs' requests for communications, it belies counsel's suggestion that the search Defendants conducted was sufficiently thorough to obtain reasonably accessible, responsive information. See Peskoff v. Faber, Civ. No. 04-526 (HHK/JMF), 2006 WL 1933483, at *4–5 (D.D.C. July 11, 2006) (discussing various locations where email correspondence can be retrieved through simple keyword searches including an inbox, sent items, trash, or other named folders as well as on computers' hard drive or other

(Footnote Continued on Following Page)

8

Of course, the Court cannot order any party to produce something in discovery that does not, in fact, exist. And it is axiomatic that no party is required to create documents in response to a Rule 34 request for production of documents. But Rule 34 does impose a burden on a party responding to requests for production to undertake a reasonably diligent search for information that is responsive to those requests. See Anderson v. Cryovac, Inc., 862 F.2d 910, 929 (1st Cir. 1988) ("[O]nce a proper discovery request has been seasonably propounded, we will not allow a party sentiently to avoid its obligations by . . . failing to examine records within its control[.]"); McElgunn v. CUNA Mut. Grp., Civ. No. 06-5061-KES, 2008 WL 271872, at *2 (D.S.D. July 10, 2008) (finding that because a party has an obligation to produce information it possesses and that it has a legal right to obtain the documents on demand, a party responding to a Rule 34 request for production is under an affirmative duty to seek information reasonably available to it from those subject to its control); A. Farber & Partners, Inc. v. Garber, 234 F.R.D. 186, 189 (C.D. Cal. 2006) (same).

Because nothing in the record indicates what type of search Defendants performed in response to Document Request Nos. 7–9, and in light of the specific evidence in the record

---

(Footnote Continued from Previous Page)
depository). "During discovery, the producing party has an obligation to search available electronic systems for the information demanded." McPeek v. Ashcroft, 202 F.R.D. 31, 32 (D.D.C. 2001) (citing Fed. R. Civ. P. 34(a)). Simply put, searching for emails within a "trash" folder, and other folders where a communication may be located, is part of any reasonably diligent inquiry for Defendants' communications with entities or individuals who held policies with Plaintiffs prior to the termination of the parties' relationship.

[3] Nothing in this Order should be read to imply that Defendants improperly disposed of any evidence. No such allegation is currently before the Court. Nevertheless, the Court finds that under the circumstances here, Defendants should be required to provide Plaintiffs with some explanation whether materials responsive to Document Request Nos. 7–9 once existed and were later destroyed, for instance, pursuant to any document retention policy Defendants may follow or otherwise.

suggesting that additional unproduced responsive materials either exist or may have once but no longer exist, the Court grants in part Plaintiffs' Motion to Compel Discovery from Defendants (Doc. No. 30). Accordingly, if additional responsive documents are located, they are to be produced, and to the extent Defendants continue to maintain that they have no additional documents responsive to the requests at issue in Plaintiffs' motion to compel, the undersigned hereby requires Defendants to serve amended responses to Plaintiff's Document Request Nos. 7–9, indicating: (a) that they have conducted a reasonable and diligent search for records within their possession, custody, or control; (b) the efforts they have made to locate documents responsive to those requests; and (c) whether any responsive documents have been destroyed, and, if so, when and under what circumstances such destruction occurred. See Lewton v. Divingzzo, No. 8:09CV2, 2010 WL 1630719, at *5 (D. Neb. Apr. 21, 2010) (providing a similar remedy where a party's responses to document requests failed to show that a diligent inquiry for responsive materials was made); see also Eley v. Herman, No. 1:04-CV-416, 2005 WL 3115304, at *2–3 (N.D. Ind. Nov. 21, 2005) (ordering a party to provide an affidavit stating that a diligent search was conducted and no records were found and describing the efforts made to locate documents responsive to discovery requests at issue in a motion to compel). Accordingly, Plaintiffs' motion is granted in part as stated above, and denied in part to the extent it seeks any relief not discussed herein.

## IV.    DEFENDANTS' MOTION TO COMPEL

As noted above, Defendants' Motion to Compel raises issues relating to several interrogatories and document requests they served on Plaintiffs. The Court notes that Defendants' counsel made clear at the hearing that the following interrogatories and requests for production are no longer the subject of Defendants' Motion to Compel: Interrogatories 6, 10, and

12, and Document Request Nos. 11, 15, 17, 27, 33, and 34. Based on counsel's withdrawal of those discovery requests from the Court's consideration, the Court denies Defendants' Motion to Compel in part as moot to the extent it sought relief with respect to those requests.

A.     **Local Rule 7.1 and the Word-Count Requirement**

Before turning to the specific discovery in dispute, the Court notes that Defendants have violated the District of Minnesota's Local Rules concerning civil motion practice. The Local Rules of the United States District Court for the District of Minnesota impose a strict word-count limitation on memoranda submitted in support of a motion. Dist. Minn. Loc. R. 7.1(f)(1)(A). Local Rule 7.1(f)(1)(A) provides that no memorandum may exceed 12,000 words unless a party receives prior permission from the Court to file a longer brief. <u>Id.</u>[4] Typically speaking, this limitation provides more than adequate room for a party to brief the issues that arise in both dispositive and non-dispositive motion practice, but if a party believes it needs to say more than the 12,000-word limit allows, Local Rule 7.1(f) provides a mechanism for the party to request relief from that limitation prior to filing its memorandum. <u>See</u> Dist. Minn. Loc. R. 7.1(f)(1)(D).

Here, despite Defendants' certification that the Memorandum of Law supporting their motion contained only 5,617 words (Doc. No. 40, Word Count Certificate of Compliance), that memorandum ultimately runs afoul of Local Rule 7.1(f)(1)(A). The memorandum begins with a generalized summary of the various deficiencies Defendants identify with Plaintiffs' response to their discovery, an appropriate way to orient the Court to the arguments that it will find set out in

---

[4]     The Local Rules were amended on July 23, 2012. These new rules applied to the motions currently before the Court because the parties filed those motions after the amendments had already taken effect. (Doc. Nos. 30, 36.) Although former Local Rule 7.1(d), setting a word-count limitation was renumbered to current Local Rule 7.1(f), the substance of the 12,000-word limit was not altered.

further detail within a brief. (See Doc. No. 37, Defs. Mem. 2.) It then cites, verbatim, fifteen separate interrogatories and thirty-two separate requests for production that are the subject of the motion and Plaintiffs' responses to each. (Id. at 4–17.) This too is a proper way to prepare a memorandum in support of a discovery motion in this District.[5] But the memorandum itself includes no specific argument concerning the relevance of any particular discovery request or why any response or objection is improper. (Id. at 4–17.) Instead, Defendants direct the Court to a prior deficiency letter directed to Plaintiffs' counsel for the specific content of Defendants' argument incorporated into their memorandum by reference. (Id. at 4 n.1.) Specifically, the Memorandum states:

> Because of the numerous problems with Plaintiffs' responses, detailed explanation of each deficiency would exceed the word count permitted. Defendants, therefore, refer the Court to their deficiency letter served upon Defendant [sic] for the specific deficiencies and analysis warranting an order of this Court.

(Id. (emphasis added).) Defendants' deficiency letter is a separate forty-three page, single-spaced document. (Doc. No. 38, Decl. of Damon L. Ward in Supp. of Mot. to Compel ("Ward Decl.") ¶ 4, Ex. 3, Deficiency Letter.) This deficiency letter alone is over 21,000 words long. When combined with the 5,617 words in Defendants' memorandum, Defendants used more than three times the 12,000-word limit to make their argument in support of their Motion to Compel.[6]

---

[5]    See Dist. Minn. Loc. R. 37.1 (providing that when a motion involves interrogatories or document requests, the moving party's memorandum must set forth the particular requests that are the subject of the motion, and explaining that any discovery motion must include, in the motion itself or in the memorandum, a verbatim recitation of the request and response at issue, or a copy of the actual discovery document that is the subject of the motion).

[6]    The Court also notes that in Defendants' deficiency letter, the arguments raised with respect to the various discovery requests Defendants cited, although arguably presented in technical compliance with the requirements of Local Rule 37.1, do little to comply with that Rule's spirit. Except in a few instances, after citing verbatim the request at issue and the

(Footnote Continued on Following Page)

By referring the Court to their deficiency letter for the content of their argument,

Defendants unilaterally granted themselves an extension of the word-count limitations set forth

in Local Rule 7.1(f)(1)(A). Although Defendants claimed at the hearing that they submitted the

letter as part of the factual record (Doc. No. 52, Tr. 3:14:13–3:14:45), Defendants' memorandum

clearly indicates that its purpose was to incorporate and present legal argument. (Defs.' Mem. 4

n.1 (explaining that making the arguments directly in the memorandum would exceed the "word

count permitted" and referring the Court to the letter "for the specific deficiencies and analysis

warranting an order from the Court").) Although Defendants are correct that motions placing a

great deal of discovery in dispute may lead to situations where staying within the 12,000-word

limit proves difficult (Tr. 3:12:25–3:13:40), when that is the case, the only proper way to get

relief from the 12,000-word limit is to file and serve a letter, prior to bringing the motion,

requesting permission to file a longer brief. Dist. Minn. Loc. R. 7.1(f)(1)(D) (indicating that a

party "must first obtain permission" to exceed limits set under Local Rule 7.1(f) by filing and

serving such a letter).

Resorting to self-help in the manner Defendants did here violates the rule, and courts

within this District have noted that this type of manipulation of the rules strains the Court's

resources and harms other litigants by taking away the Court's time to address other pending

cases. See Carlson Mktg. Grp., Inc. v. Royal Indem. Co., 2006 WL 2917173, at *1–2 (D. Minn.

Oct. 11, 2006) (noting that a party's lawyer improperly resorted to self-help from the word count

limitations of Local Rule 7.1(d)'s predecessor by splitting a summary judgment motion into three

_____

(Footnote Continued from Previous Page)
Plaintiffs' response, the letter repeats generalized and conclusory statements that the information sought is relevant, that Plaintiffs' objections are invalid, and that the scope of discovery is broad. In other words, the deficiency letter itself does very little to assist the Court in determining whether the discovery sought is needed and why any response was improper.

separate "partial motions for summary judgment").  Violations of the word-count limits can justify the return of filed documents to counsel with instructions that they be submitted in a form that complies with the Local Rules.  <u>Id.</u>, 2006 WL 2917173, at *2.  And here, the Court would be well within its discretion to deny Defendants' motion on the grounds that Defendants have intentionally exceeded the 12,000-word limit in Local Rule 7.1(f)(1)(A).  <u>See</u> Dist. Minn. Loc. R. 1.3 (providing that a Court may, among other sanctions for a violation of the Local Rules, strike pleadings or papers to protect the parties and the interests of justice); <u>Tuttle v. Lorillard Tobacco Co.</u>, 2003 WL 1571584, at *1 n.2 (D. Minn. Mar. 3, 2003) (limiting that party's presentation at a hearing due to egregious violation of prior version of the Local Rules, which set a thirty-five-page limit for memoranda).

However, this litigation must move forward to some resolution, and that is unlikely to happen as quickly as necessary unless the Court addresses the merits of Defendants' motion to compel.  In the interest of justice, therefore, the Court will turn next to the specific discovery in dispute.  The foregoing discussion should, nevertheless, serve as a warning to Defendants that compliance with the Local Rules in this and other cases is demanded and that serious sanctions could justifiably result from their violation.

**B.      Counting Interrogatories**

With respect to the interrogatory responses Defendants have moved to compel, the parties dispute whether Defendants exceeded the twenty-five-interrogatory limit established by the Court's Pretrial Scheduling Order in accordance with Federal Rule of Civil Procedure 33.  The Pretrial Scheduling Order provided that interrogatories would be "counted in accordance with Rule 33."  (Doc. No. 15 at 2.)  Defendants served twenty-one numbered interrogatories.  (Doc. No. 38, Ward Decl. ¶ 2, Pls.' Resps. to Defs' Interrogs.)  Plaintiffs answered the first twelve

numbered interrogatories, and objected to the rest on grounds that they "exceed 25 in number." (Id.)

Rule 33 of the Federal Rules of Civil Procedure provides that "[u]nless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." Fed. R. Civ. P. 33(a)(1). The Rule itself does not define what counts as a "discrete subpart," but the manner used to count interrogatories is addressed in the advisory committee notes:

> Parties cannot evade this presumptive limitation through the device of joining as "subparts" questions that seek information about discrete subjects. However, a question asking about communications of a particular type should be treated as a single interrogatory even though it requests the time, place, persons present, and contents be stated separately for each such communication.

Fed. R. Civ. P. 33, advisory committee note (1993). The Eighth Circuit has not adopted any specific test for counting interrogatories. At least one court in this District has addressed the matter in an unpublished order, noting that "interrogatory subparts are to be counted as one interrogatory . . . if they are logically or factually subsumed within and necessarily related to the primary question." Buetow v. A.L.S. Enters., Inc., et al., Civ. No. 07-3970 (RHK/JJK), Doc. No. 285 at 4–5 (D. Minn. Sep. 21, 2009) (unpublished) (Keyes, M.J.) (quotations omitted). Other district courts in the Eighth Circuit also count similarly. Highmark, Inc. v. Nw. Pipe Co., No. CIV 10–5089–JLV, 2012 WL 997007, at *2 (D.S.D. Mar. 23, 2012) (citing Waterbury v. Scribner, No. 1:05–cv–0764 OWW DLB PC, 2008 WL 2018432, at *2 (E.D. Cal. May 8, 2008) for the proposition that subparts count as one interrogatory if they are logically or factually subsumed within and necessarily related to the primary question); Guzman v. Farmland Foods, Inc., No. 8:08CV504, 2011 WL 1059116, at *2 (D. Neb. Mar. 21, 2011) (same); E.E.O.C. v. Dawes County, Neb., No. 8:07CV376, 2008 WL 2513755, at *2 (D. Neb. June 19, 2008) (same).

Here, Plaintiffs argue that Defendants exceeded the number of interrogatories permitted by asking Plaintiffs, in Defendants' Interrogatory No. 8, to identify all the facts that support the affirmative defenses to Defendants' Counterclaims. (Ward Decl. ¶ 2, Ex. 1, Pls.' Resps. to Defs.' Interrogs., Interrog. No. 8.) Plaintiffs asserted fourteen separate affirmative defenses to Defendants' Counterclaims in their Reply to Defendants' Counterclaims. (Doc. No. 9, Pls.' Reply to Defs.' Countercl. ¶¶ 104–18.) The Court agrees with Plaintiffs that Defendants' Interrogatory No. 8 counts as fourteen separate interrogatories because that interrogatory seeks information about fourteen discrete subjects which are joined together in a single interrogator. See Fed. R. Civ. P. 33, advisory committee note (1993) (noting that parties cannot evade a limit on the number of interrogatories by joining "subparts" into questions that seek information about discrete subjects). For example, in their Reply to Defendants' Counterclaim, Plaintiffs asserted, *inter alia*, a statute-of-limitations defense, the defense of "truth" to Defendants' defamation counterclaim, and the defense that Defendants have failed to mitigate damages, if any. (Pls.' Reply to Defs.' Countercl. ¶¶ 108, 110, 115.) Each of these defenses involves a different inquiry and depends upon distinct facts. In other words, Defendants' Interrogatory No. 8 includes fourteen discrete subparts because the factual basis for each affirmative defense is not logically or factually subsumed within or necessarily related the factual basis for every other affirmative defense Plaintiffs have raised. See Buetow, Civ. No. 07-3970 (RHK/JJK), Doc. No. 285 at 4–5; see, e.g., Bell v. Woodward Governor Co., No. 03C50190, 2005 WL 3829134, at *2 (N.D. Ill. June 30, 2005) (counting one interrogatory that asked for the facts supporting twenty-one affirmative defenses as twenty-one separate interrogatories because the interrogatory "improperly seeks to combine twenty-one questions into one"); Bujnicki v. Am. Paving and Excavating, Inc., No. 99-CV-0646S(SR), 2004 WL 1071736, at *8–9 (W.D.N.Y. Feb. 25, 2004)

(reasoning that an interrogatory asking about twelve affirmative defenses counted as twelve interrogatories because it was seeking information about twelve "distinct and separate" defenses).

For these reasons, the Court denies Defendants' motion to compel to the extent that Defendants seek answers to Defendants' Interrogatory Nos. 13 through 25.[7]

## C. Discovery Concerning Other Incidents of Harassment and Plaintiffs' Discrimination Policies

Of those discovery requests not excluded from consideration by Section IV.B. above, Defendants seek to compel responses to several of their discovery requests that seek information about other incidents in which individuals complained of being discriminated against by Plaintiffs or Plaintiffs' employees, and production of manuals or similar materials addressing the company's policies concerning discrimination. These include Interrogatory Nos. 5, 7, and 9, and Document Request Nos. 7, 8, and 13.

Plaintiffs agreed to produce only a limited amount of information in response to these requests, but they generally objected to responding on grounds that providing the information sought would cause an undue burden and that the requests sought information that was neither relevant nor likely to lead to the discovery of admissible evidence. (Doc. No. 38, Ward Decl. ¶ 2, Ex. 1 at 4–5, 10; *id.* ¶ 3, Ex. 2 at 4–5, 7.) In response to Defendants' motion, Plaintiffs submitted affidavits indicating the burden that would be imposed by conducting the nationwide

---

[7] The Court notes, however, that Interrogatory No. 14 asks for information that Plaintiffs are required to disclose under the Pretrial Scheduling Order (Doc. No. 24) as part of their expert disclosures and the filing of any expert report in this matter. The Court's ruling that Plaintiffs need not provide any further answer to Defendants' Interrogatory Nos. 13 through 25 does not alter that obligation.

search for discrimination complaints required to respond to these discovery requests. (Doc. No. 45, Aff. of John Lindeman; Doc. No. 46, Aff. of Mary Harvey.)

At the hearing, Defendants argued that these requests are relevant to establishing whether Plaintiffs have engaged in a pattern or practice of discrimination, which Defendants may try to use to rebut any evidence Plaintiffs present to prove that they had legitimate, non-discriminatory reasons for taking some adverse employment action against Defendants. See Smith v. DataCard Corp., 9 F. Supp. 2d 1067, 1078–79 (D. Minn. 1998) (explaining that courts apply the McDonnell Douglas burden-shifting scheme to race discrimination schemes under 42 U.S.C. § 1981). Several courts have noted that evidence of other incidents of discrimination can be relevant to establishing an employer's pattern or practice of discrimination, and, therefore, discovery into such other incidents is permissible. See, e.g., Onwuka v. Fed. Express Corp., 178 F.R.D. 508, 516–17 (D. Minn. 1997) (noting that some discovery regarding alleged discriminatory practices at issue may be allowed in the Title VII context and that some courts have tailored requests for historic company records to a reasonable time period before and after the alleged discrimination took place). However, most courts that allow such discovery conclude that it should be limited by such factors as time, the type of action complained of, or the type of discrimination alleged. See Burns v. Hy-Vee, Inc., No. Civ. 02-254 (JRT/FLN), 2002 WL 31718432, at *2–3 (D. Minn. Nov. 21, 2002) (discussing appropriate scope of discovery in the context of Title VII disparate treatment claims as being limited to the employment practices at issue regarding similarly situated employees and to a reasonable time period around the alleged discriminatory event); Pleasants v. Allbaugh, 208 F.R.D. 7, 14–15 (D.D.C. 2002) ("As with other discovery requests, the proper scope of discovery seeking other complaints of discrimination against defendant must be limited in time, type of action complained of or type of discrimination

alleged."). And, where disparate treatment is alleged, courts are hesitant to allow discovery into a company's practices nationwide; "[g]enerally, a plaintiff alleging disparate treatment is not entitled to company-wide discovery absent a showing of particular need and relevance of the requested information." Burns, 2002 WL 31718432, at *2.

Here, Defendants' requests for information about other incidents of discrimination are nationwide, or company-wide in scope. To support this broad scope, at the hearing, Defendants directed the Court to a case from this district: Ross v. Ford Motor Co., Civil No. 98-2602 (JRT/FLN) (D. Minn. 1998). In an unpublished order dated May 3, 2000, Magistrate Judge Franklin Noel required Ford to answer certain interrogatories seeking "information regarding race discrimination in Ford plants located in the United States from 1987–1998." Id., Doc. No. 95 ¶ 2.A. But Judge Noel's order in Ross does not explain the reasons he determined that nationwide discovery of racial discrimination in Ford plants was appropriate under the circumstances of that case, although it may be due to the fact that, as the listing of parties' names shows on the Court's electronic records, the plaintiff brought the action on behalf of herself and all others similarly situated. Accordingly, the Court cannot rely on this order from Ross as a guide to determine the proper scope of discovery here.

At the hearing, Defendants also directed the Court to another case from this District: Weaver v. Ford Motor Co., Civ. No. 99-785 (DSD/SRN) (D. Minn. May 20, 1999). In an unpublished order, dated July 28, 2000, then Magistrate Judge Susan Richard Nelson permitted the plaintiff to obtain nationwide discovery from Ford regarding its handling of race discrimination claims made by its employees. Id., Doc. No. 56 at 5–7. However, Judge Nelson based her decision in Weaver on the fact that the plaintiff had met its burden to show a particularized need for and relevance of nationwide discovery. Id., Doc. No. 56 at 6. Judge

Nelson also noted that "there is some evidence that the policies governing, the manner of handling, and investigation of claims of discrimination by Ford employees emanate from Ford's headquarters in Dearborn, Michigan, [so that] the relevant scope of discovery to be produced by Ford in this matter shall be nationwide claims of racial discrimination . . . ." Id. Here, Defendants have not attempted to make such a showing, and there is nothing in the record to allow this Court to conclude that Defendants should be entitled to nationwide or company-wide discovery regarding other incidents of discrimination.

Nevertheless, the Court grants Defendants' motion to compel responses to the interrogatories and document requests at issue in part. Plaintiffs need not produce nationwide or company-wide discovery relating to other incidents or claims of race discrimination. But Plaintiffs must produce discovery relating to other incidents or claims of race discrimination in Minnesota. Further, Defendants will not be entitled to discovery of any other incidents or claims of other types of discrimination, such as age or sex discrimination, as there are no such allegations in this matter. Plaintiffs must, however, provide information relating to other claims of discrimination or disparate treatment based on race. The Court also requires Plaintiffs to provide discovery of such other-claims information for a period of three years prior to Plaintiffs' business relationship with Defendants through its termination.

In addition, the Court notes that Plaintiffs assert that they produced manuals reflecting their policies on race discrimination for the period of 2006 through 2010. The Court finds that Plaintiffs' selection of 2006 is an arbitrary and unnecessary limitation on the scope of discovery. Plaintiffs' business relationship with Defendants began in 2003. Thus, Plaintiffs must produce employee manuals from 2003 through 2010 that relate to Plaintiffs' race-discrimination policies.

For that same timeframe, Plaintiffs must also produce any manuals covering policies on race-discrimination involving independent contractors.

### D.     Personnel Files

Defendants also move to compel responses to their requests for production of personnel files for certain of Plaintiffs' employees. These include Document Request Nos. 4, 5, 18, 19, and 20. Plaintiffs have supplemented their responses to these requests,[8] and their counsel has asserted in an affidavit accompanying their opposition to Defendants' motion that he "reviewed [Plaintiffs'] personnel files for Locke Pierce, Jason Brandon, Erik Anderson, Tom Illies and David Ramos," but found no references in any of their files to any complaints or claims of discrimination against any of them. (Doc. No. 33, Weinstein Aff. ¶ 4.) However, Plaintiffs' counsel's affidavit does not explain how Plaintiffs keep the records comprising these individuals' personnel files, or what his search entailed. If Plaintiffs maintain a completely centralized personnel file for these employees that hold all of the information relating to any claims or complaints of discrimination made against Messrs. Pierce, Brandon, Anderson, Illies, and Ramos, reviewing all the contents of that file might indeed satisfy Plaintiffs' obligation to respond to Defendants' requests. Therefore, the Court will require Plaintiffs to supplement their responses to these document requests by explaining how Plaintiffs maintain their personnel files and what the "review" of those files entailed. Consistent with this Order, if Plaintiffs determine that their previous review of the personnel files was inadequate, they should conduct an adequate

---

[8]     According to Plaintiffs, they inadvertently failed to supplement their response to Document Request No. 5. However, they represent that they reviewed the relevant personnel file and "found no reference to any claims or complaints of discrimination against or involving him, and no references whatsoever to Defendants." (Doc. No. 44, Pls.' Resp. 15 n.3.)

search to locate any potential claims or complaints of discrimination against the foregoing individuals and produce any information relating to those complaints.

In addition, the Court will require Plaintiffs to produce certain information from the personnel file for Locke Pierce, the individual who had managerial responsibility over the region in which Defendants operated during their business relationship with Plaintiffs. Plaintiffs only need to produce information from that file relating to any disciplinary history or other complaints of whatever nature against Mr. Pierce. Defendants must nevertheless treat any information produced from Mr. Pierce's personnel file as subject to the Protective Order in place in this case (Doc. No. 21), and take necessary efforts to avoid its unnecessary disclosure or use outside this litigation.

Plaintiffs are not required to provide any information concerning the compensation, benefits, health information, or other similar personal employment information of Messrs. Pierce, Brandon, Anderson, Illies, or Ramos.

### E. Remaining Discovery Requests

#### 1. Plaintiffs' Prior Policy Holders

In Document Request No. 14, Defendants ask for the following: "All lists, records, files or other documents, including, but not limited to electronic records, that describe, identify, or in any way relate to any person or entities who were, at any time prior to December 2, 2010, policyholders or prospective policyholders of Farmers for whom Defendants provided service." (Doc. No. 38, Ward Decl. ¶3, Ex. 2 at 7.) Plaintiffs objected and Defendants contend that they were required to produce the requested information. The Court finds that this request is overly broad. Therefore, Defendants' motion to compel is denied to the extent it seeks production of documents responsive to this request.

## 2.        Boilerplate Objections and Manner of Production

Defendants assert that several of Plaintiffs' objections are impermissible boilerplate objections that should be overruled and complain that Plaintiffs produced documents without noting by Bates number which documents were responsive to any particular request. These include Plaintiffs' responses to Document Request Nos. 6, 9, 10, 12, 16, 21, 23, 28–32, and 35–39. Consistent with the discussion that follows, the Court grants in part Defendants' motion to compel as to these document requests.

Several of the requests are proper requests for information supporting contentions made in Plaintiffs' Complaint—Document Request Nos. 28–32 and 35–39. These requests seek documents that may have formed Plaintiffs' good-faith basis for bringing several of their claims and for the factual allegations found in the Complaint. To each of these requests Plaintiffs provided the same generalized objections of overbreadth, undue burden, and relevance, but yet agreed to produce information responsive to these requests. Conclusory objections asserting the boilerplate response that a request is overly broad and burdensome are not valid objections. See Mead Corp. v. Riverwood Nat. Res. Corp., 145 F.R.D. 512, 515 (D. Minn. 1992). To the extent that Plaintiffs withheld any documents responsive to these requests on the grounds asserted in their response, those objections are overruled and Plaintiffs must produce all responsive material within their possession, custody, or control.

The same analysis applies to Defendants' Document Request No. 6 (seeking internal non-privileged memoranda relating to Defendants), Document Request No. 9 (seeking copies of any complaints made by Defendants), Document Request No. 10 (seeking photographs and any other visual evidence relating to the subject matter of the lawsuit), Document Request No. 12 (seeking documents relating to Defendants' service in various roles with Plaintiffs), and Document

Request Nos. 21 and 23 (seeking documents relating to certain communications). Plaintiffs raised invalid boilerplate objections and yet agreed to produce responsive documents. To the extent that Plaintiffs withheld any documents responsive to these requests on the grounds asserted in their response, those objections are overruled, and Plaintiffs must produce all responsive information within their possession, custody, or control.

With respect to Document Request Nos. 6–10, 12, 21, 23, 28–32, and 35–39, Defendants complain that Plaintiffs merely dumped thousands of documents on them without indicating, by Bates number, which documents are responsive to which request. (See, e.g., Doc. No. 38, Ward Decl. ¶ 4, Ex. 3, Deficiency Letter 21 (noting with respect to Document Request No. 7 that Plaintiffs "provided in electronic form nearly 1,000 documents without identifying which electronic form document corresponds to which discovery request").) At the hearing, Plaintiffs' counsel stated that Plaintiffs produced documents as they are kept in the ordinary course of business, but he conceded that Plaintiffs did not provide a specific reference to Bates numbers or ranges that correspond to particular requests. (Doc. No. 52, Tr. 3:40:10–3:41:40.)

Federal Rule of Civil Procedure 34 provides two alternatives for a party in producing documents responsive to requests propounded under Rule 34. Fed. R. Civ. P. 34(b)(2)(E)(i). It provides that a party must either (1) "produce documents as they are kept in the usual course of business," or (2) "organize and label them to correspond to categories in the request." Id. "Producing large amounts of documents in no apparent order does not comply with a party's obligation under Rule 34." See Wagner v. Dryvit Sys., Inc., 208 F.R.D. 606, 610 (D. Neb. 2001). "[T]he producing party does have a burden to select and produce the items requested rather than simply dumping large quantities of unrequested materials onto the discovering party along with the items actually sought under Rule 34." 8B James A. Wright & Arthur R. Miller,

<u>Federal Practice & Procedure</u> § 2213 (3d ed. 2010).  The purpose and spirit of the Rule

permitting a party to select between the two alternatives provided is to prevent a party from

making documents responsive to requests difficult to find.  <u>See</u> Fed. R. Civ. P. 34, advisory

committee note (1980) (noting that the two-alternative approach was taken in response to the

frequent practice of parties deliberately mixing critical documents with others for the purpose

obscuring their significance).

On the record before the Court, it is impossible to determine the precise manner in which

Plaintiffs produced their documents to Defendants.  Plaintiffs are permitted by the rule to

produce documents as they are "kept in the usual course of business."  If this alternative for

production of documents is chosen, the producing party is not, as Defendants' motion impliedly

suggests, required to indicate by Bates number which documents within the produced file

correspond to which request, and Defendants have offered no authority to require Plaintiffs to

undertake this task.  Nevertheless, even if Plaintiffs have, as indicated by their counsel at the

hearing, produced documents as they are kept in the ordinary course of business, they should not

be permitted to produce documents in such a manner that Defendants cannot readily ascertain

what order they are in.  <u>See</u> <u>Graske v. Auto-Owners Ins. Co.</u>, 647 F. Supp. 2d 1105, 1108–09 (D.

Neb. 2009) (concluding that the defendant's production of nearly 7,000 pages of documents

without any indices or other tools to guide the plaintiffs to responsive documents was deficient

for responses to certain document requests).

In other words, to demonstrate that they have complied with Rule 34 by producing

documents as they are kept in the ordinary course of business, Plaintiffs must still provide

Defendants with additional information about the manner in which the documents were

maintained or otherwise supplement their response to the requests noted above to comply with

Rule 34.  Thus, Plaintiffs' supplementation should include, where applicable, any index identifying the categories of documents produced, where they were maintained or who maintained them, whether documents within a category come from multiple sources or files, or other information that shows what Plaintiffs' usual course of business is.  See GP Indus., LLC v. Bachman, No. 8:06CV50, 2008 WL 1733606, at *2–*3 (D. Neb. Apr. 10, 2008) (describing the proper showing to establish that documents have been produced as they are kept in the usual course of business).  If Plaintiffs do not make the foregoing supplementation regarding how they maintain the documents they have already produced, Plaintiffs must alternatively supplement their responses to these requests by indicating the Bates range where documents responsive to each request will be located.  See Fed. R. Civ. P.  34(b)(2)(E)(i); Rakes v. Life Investors Ins. Co. of Am., No. C06-0099, 2008 WL 429060, at *3(N.D. Iowa Feb. 14, 2008) (requiring party to supplement response to a single request for production to identify the documents it believed were responsive to the request where no information was provided to allow the other party to discern what documents were responsive); Kellogg v. Nike, Inc., No. 8:07CV70, 2007 WL 4570871, at *3 (D. Neb. Dec. 26, 2007) (requiring party that failed to show that documents were produced as they were kept in the usual course of business to provide the Bates number of the documents responsive to the categories in each request).

## F.  Privilege Log

Finally, Defendants complain that Plaintiffs' privilege log fails to adequately identify which documents have been withheld on the grounds of privilege, and that it mentions documents that Plaintiffs believe are privileged but have not been included on the privilege log. The Court has reviewed Plaintiffs' privilege log and finds that it provides the information required by Fed. R. Civ. P. 26(b)(5)(A).  Because the Court finds that Plaintiffs' privilege log

adequately provides the information required by the Rules, the court also denies Defendants'
motion to compel some additional response to Document Request No. 16, which was based on
Defendants' contention that Plaintiffs improperly objected on privilege and failed to adequately
describe documents on their privilege log.

Further, as explained by Plaintiffs' counsel at the hearing and as noted in the privilege log
itself, the information that Plaintiffs consider to be protected by the attorney-client privilege that
has not been identified on the privilege log are communications, drafts of documents, and other
information produced after this litigation commenced. In other words, what Plaintiffs have left
off the privilege log are litigation-specific documents that they have generated in response to this
lawsuit. The Court will not require Plaintiffs to update their privilege log to include such
information in this case. The Court finds no justification for imposing such a burden on the
Plaintiffs here under the Rules, and Defendants offer none. Therefore, Defendants' motion to
compel is denied to the extent it seeks relief related to Plaintiffs' privilege log.

## V.       CONCLUSION

**NOW**, **THEREFORE**, it is –

**ORDERED**:

1.       That Plaintiffs' Motion to Compel Discovery from Defendants (Doc. No. 30), is
**GRANTED IN PART** and **DENIED IN PART** as more fully described above; and

2.       That Defendants' Motion to Compel (Doc. No. 36), is **GRANTED IN PART** and
**DENIED IN PART** as more fully described above.

BY THE COURT:


Dated: September 21, 2012                    s/Leo I. Brisbois
                                            Leo I. Brisbois
                                            U.S. MAGISTRATE JUDGE

27